# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JUAN ANDRES BALDERAS, JR.,

Plaintiff,

v.

KRISTIN VASQUEZ, CINDY STREET, GINGER RANDOLPH, JUSTIN WOODS, JESSICA STUDZINSKI, MICHELLE BONES, TRAVIS BRADY, and WISCONSIN DEPARTMENT OF CORRECTIONS,

Defendant.

Case No. 26-CV-1071-JPS

**ORDER**

Plaintiff Juan Andres Balderas, Jr. ("Plaintiff"), an inmate incarcerated in Oakhill Correctional Institution, filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights. ECF No. 1. This Order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee and screens his complaint.

## 1. MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE

The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On July 20, 2026, the Court ordered Plaintiff to pay an initial partial filing fee of $28.73. ECF No. 7. Plaintiff paid that fee on August 3, 2026. The Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 2. Plaintiff must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

## 2. SCREENING THE COMPLAINT

### 2.1 Federal Screening Standard

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

Plaintiff names Defendants Kristin Vasquez ("Vasquez"), Cindy Street ("Street"), Ginger Randolph ("Randolph"), Justin Woods ("Woods), Jessica Studzinski ("Studinski"), Michelle Bones ("Bones"), Travis Brady ("Brady"), and the Wisconsin Department of Corrections ("DOC"). ECF No. 1 at 1. Plaintiff's claims involve his treatment at Racine Correctional Institution. *Id.* at 2. Woods denied Plaintiff his infection prevention diet on July 24, 2020. *Id.* His infection continued through October 17, 2024 when Randolph denied him follow-up exams and instead let the infection painfully run its course. *Id.* On July 29, 2020, Plaintiff got a painful infection with yellow/green fluid muffling his ear and Vasquez denied him medicine. *Id.* On August 20, 2020, Plaintiff got a ten-day treatment with Neomycin, among other medicines, and ear drops. *Id.* at 3. He was denied follow-up treatment again and the infection came back worse. *Id.* Plaintiff allowed nurses to come up with their own solutions for treating his illness that did not include his special diet or asking for Neomycin by name. *Id.*

On September 20, 2020, Vasquez approved Mucin X and on November 6, 2020, she approved another congestion medicine. *Id.* This

inadequate treatment left Plaintiff in pain and Vasquez ignored his request for Neomycin. *Id.* Vasquez called his infection "nose drainage" and told Plaintiff that he would meet with his provider later that month. *Id.*

On May 6, 2021, Plaintiff was denied Neomycin for his ear infection. *Id.* On July 26, 2021, Vasquez let the nurses tell Plaintiff to drink more water even though they had detected a new scar on his inside ear. *Id.* On July 28, 2021, Randolph, his health care provider, did not treat him and instead told him to come back and that he would be seen by a specialist soon. *Id.* On September 15, 2021, Martin examined Plaintiff and reported "Pale Tounge[sic] with Bumps," refilled his Neomycin, and a ten-day supply of Amoxicillin. *Id.*

On November 8, 2021, Vasquez declared in an internal memo that Plaintiff's ear, nose, and throat problems were healed. *Id.* at 3-4. Vasquez denied him his diet, Neomycin, tums, and allergy medicine already prescribed to him at intake. *Id.* at 4. Vasquez instead relayed that he would be seeing a specialist soon. *Id.* Many different staff treated Plaintiff and came up with new treatment ideas without following up on previous treatment. *Id.* Some sick calls went unanswered and some merely instructed Plaintiff to drink more water. *Id.* Plaintiff continued to complain about his ears from November 8, 2021 through December 8, 2021, but the nurses gave him no medicine and continued to encourage him to drink water. *Id.*

In February 2022, Plaintiff was denied pain medicine because staff thought his pain was dental related and he had an upcoming visit. *Id.* On April 5, 2022, the dentist informed Plaintiff that a tooth cavity was not causing the ear pain. *Id.* On March 12, 2022, Plaintiff complained of ear pain with a popping noise, and he was told to exercise his jaw, which did. *Id.* Martin did not prescribe medication for Plaintiff's various sick calls in 2022

and instead told him to purchase tums from the canteen. *Id.* Martin did this despite not having any information about whether tums were available or whether Plaintiff had funds to purchase them. *Id.*

Randolph examined Plaintiff's ear through an otoscope and noted that he had yellow drainage and redness inside his ear. *Id.* at 4-5. Randolph denied him treatment and told him to wait for his specialist visit. *Id.* at 5. From November 2, 2022 through January 24, 2024, Plaintiff was promised to see a specialist in response to his sick calls. *Id.* Vasquez told her staff to consider Plaintiff's problem as new, which was not true. *Id.* Nurses continued to treat Plaintiff during this time period with ideas that did not address his own opinions and personal health. *Id.* On August 21, 2024, Plaintiff was treated with ear wax removal, ciprofloxacin, and Bactrian (hand germ treatments).

On January 24, 2024, Plaintiff was finally given Neomycin after requesting it for years. *Id.* at 6. The medicine did little to help because the infection had already done its permanent damage. *Id.* Randolph and Vasquez then told Plaintiff that he no longer gets allergy medicine and tums. *Id.* On April 14, 2024, Plaintiff saw the specialist, who prescribed him tums and allergy treatment. Defendants did not give Plaintiff the nasal spray until June 1, 2026. Plaintiff saw the specialist again on July 1, 2024, and the specialist confirmed that Plaintiff needed hearing assistance. *Id.*

Plaintiff's infection came back worse on October 17, 2024, and a nurse gave him only ear wax removal that did not work. *Id.* On December 11, 2024, staff explained that Plaintiff's requested Neomycin, tums, and allergy medicines were not part of Randolph's treatment plan. *Id.* In May through July of 2025, Plaintiff was given nothing for blood in his ear canal, the taste of blood, pain, and hearing loss. *Id.* at 7. In July 2025, Street denied

Plaintiff ear wax removal to avoid pain. *Id.* In August 2025, Street gave war wax removal for his ear infection pain. *Id.* Randolph confirmed seeing an infection in Plaintiff's ear on August 10, 2025, but gave him nothing and told him he had a fourth hearing test soon. *Id.*

On July 21, 2025, Bones, Woods, Studzinski, and the DOC kicked Plaintiff off the specialist prescription for a hearing aid phone without Plaintiff having a specialist follow-up visit. *Id.* Only a non-healthcare housing manager made the decision to remove Plaintiff's hearing aid. *Id.* Defendants gave improper medical treatment for Plaintiff's fifty-six sick calls over the course of four years. *Id.* Defendants knew how to treat Plaintiff, but they failed to properly treat his infection. *Id.*

### 2.3 Analysis

The Court finds that Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 18 and 20. While multiple claims against a single party are fine, a plaintiff cannot bring unrelated claims against different defendants in the same case. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. P. 18(a) and 20(a)(2). A plaintiff may join multiple defendants in a single case only if the plaintiff asserts at least one claim against each defendant that arises out of the same events or incidents and involves questions of law or fact that are common to all the defendants. Fed. R. Civ. P. 20(a)(2); *George*, 507 F.3d at 607; *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) (joinder of multiple defendants in one case "is limited to claims arising from the same transaction or series of related transactions").

For example, if a plaintiff has one claim against Defendants A, B, C and D and an unrelated claim against Defendants A, B, and E, and he wants to proceed with both claims in the same case, Rules 18 and 20 require him

to dismiss defendants C, D and E. That way, he can proceed against the two defendants (A and B) who are common to both claims. If the plaintiff wants to pursue claims against defendants C, D and E, he must file separate lawsuits against them. To be clear: Under Rule 18, the plaintiff can join as many claims as he wants against an opposing party, but he still must comply with Rule 20, which allows a plaintiff to join defendants in one case only if (a) he asserts a joint right to relief against them, or the right he asserts related to or arose out of the same transaction or occurrence or there is a common question of fact or law as to all defendants.

Here, Plaintiff's complaint violates Rules 18 and 20 because it attempts to bring unrelated claims against multiple defendants. Plaintiff's claim under the Americans with Disabilities Act ("ADA") regarding the 2025 denial of his phone accommodation does not involve the same defendants and does not arise from the same transaction or series of transactions as Plaintiff's claim alleging inadequate health care from 2020 onward. If Plaintiff wants to pursue all his claims, he must file separate lawsuits for each incident, naming only the defendants involved in each incident in the relevant case, and must pay a filing fee for each lawsuit.

When a plaintiff has improperly joined unrelated claims against unrelated defendants, the court must reject the complaint "either by severing the action into separate lawsuits or by dismissing the improperly joined defendants." *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011) (citing Fed. R. Civ. P. 21). Rather than the Court deciding which claims to sever (remove from the case) or which defendants to dismiss, the Court will instead give Plaintiff an opportunity to choose which of the above-described unrelated claims he wants to pursue in this case, and which he wants to bring in separate cases.

The Court will give Plaintiff the opportunity to file an amended complaint on or before **November 10, 2026** by which to file an amended complaint that focuses on the related claim(s) of his choice. If he wishes to pursue the other unrelated claims, he may file separate complaints regarding those claims. If Plaintiff fails to file an amended complaint by the deadline, the Court may dismiss his case for the failure to prosecute.

In amending his complaint, Plaintiff should consider the following additional information. Section 1983 does not allow actions against persons merely because of their supervisory roles. *T.E. v. Grindle,* 599 F.3d 583, 588 (7th Cir. 2010). Only a defendant who is personally responsible for depriving the plaintiff of a constitutional right may be held liable under § 1983. *Grieveson v. Anderson,* 538 F.3d 763, 778 (7th Cir. 2008). A supervisor may be held liable under § 1983 if he or she "know[s] about the conduct and facilitate[s] it, approve[s] it, condone[s] it, or turn[s] a blind eye for fear of what they might see." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).

Finally, the Court additionally notes that some of Plaintiff's § 1983 claims may be barred by the statute of limitations. For "§ 1983 claims, a cause of action accrues when the plaintiff knew or should have known that [he] had sustained an injury." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004). The relevant Wisconsin statute of limitations is either six or three years, depending on the accrual date. *See D'aquisto v. Love*, No. 20-C-1034, 2020 WL 5982895, at *1 (E.D. Wis. Oct. 8, 2020) (explaining that in 2018 the Wisconsin legislature changed the statute of limitations under Wis. Stat. § 893.53 from six years to three years).

## 3. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 2, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the amended complaint violates Federal Rules of Civil Procedure 18 and 20; Plaintiff must submit an amended complaint on or before **November 10, 2026**; Plaintiff's failure to do so may result in the dismissal of this case for his failure to prosecute;

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a blank prisoner amended complaint form and a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order;

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $321.27 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution; and

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined.

Dated at Milwaukee, Wisconsin, this 20th day of October, 2026.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.